

# Tutor Perini

8211 Washington Blvd., Jessup, MD 20794

PH: (410) 799-3577 F: (410) 799-5483

# LETTER OF TRANSMITTAL

| DATE: | January 31, 2018 | JOB NO. | 1.1E+07 |
|---|---|---|---|
| ATTENTION: | John Stieb | | |
| RE: | Replacement of Canton Viaduct | | |
| | Contract No. HT-694-000-006 | | |

**TO**

Nasir & Associates, LLC.
12900 Shenandoah Shores Road
Front Royal, VA 22630
(703) 547-9100

## WE ARE SENDING YOU

- [X] Attached
- [ ] Shop drawings
- [ ] Copy of letter
- [ ] Plans
- [ ] Specifications
- [ ] Under separate cover via _____ the following items:
- [ ] Prints
- [ ] Change order
- [ ] Samples
- [x] Purchase Order

| Copies | Date | No. | Description |
|---|---|---|---|
| 2 | 23-Jan-18 | 13 | Purchase Order No. 10704500-PO-013 for the above referenced project. |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

## THESE ARE TRANSMITTED as checked below:

- [ ] For Approval
- [ ] For your use
- [ ] As requested
- [ ] Review/comment
- [ ] FOR BIDS DUE
- [ ] Approved as submitted
- [ ] Approved as noted
- [ ] Returned for corrections
- [x] For signature
- [ ] Resubmit _____ copies for approval
- [ ] Submit _____ copies for distribution
- [x] Return **2** Original prints
- [ ] PRINTS RETURNED AFTER LOAN TO US

REMARKS **Please review, sign and return both originals to this office for final execution.**

**Once fully executed we will forward one original to you for your files.**

COPY TO: File/Field

SIGNED _____

Ivy Liu, Contracts Administrator

| Job No. | PURCHASE ORDER | |
|---|---|---|
| **10704500** | | Page 1 of 4 |

| Date: | ***TUTOR PERINI CORPORATION*** | Order No. |
|---|---|---|
| 1/23/18 | | 10704500-PO-013 |

| Sales Tax | Point of Issue | ↑This number must appear on all packages, mail, & papers relative to this order. |
|---|---|---|
| **See Notes** | 8211 Washington Blvd. Jessup, MD 20794 | |

| Issue To: | Delivery Date | F.O.B. Point |
|---|---|---|
| Nasir & Associates, LLC. 12900 Shenandoah Shores Road Front Royal, VA 22630 Attn: John Stieb (703) 547-9100 | See Notes | Jobsite |
| | Payment Terms | Ship Via |
| | Net 45 Days | Truck |

| Consignee and Destination: | Invoice Address |
|---|---|
| Tutor Perini Corporation Attn: | Tutor Perini Corporation – Job No. 10704500 1000 Main Street New Rochelle, NY 10801 Attn: Accounts Payable (914) 739-1908 |

For use in the construction of the Replacement of Canton Viaduct I-895 Over I-95 Ramps, Railroads & City Sts. And Rehabilitation of Baltimore Harbor Tunnel & Tunnel Approaches. Contract No. HT-694-000-006. for the Maryland Transportation Authority (herein after referred to as MDTA). **VENDOR TO FURNISH** all necessary materials, engineering, equipment and incidentals required to manufacture, test, fabricate and ship to jobsite the following, all in accordance with the Contract Documents including All Addenda.

Please enter our order for the following, subject to conditions and instructions named herein. IMPORTANT — This order is not valid until the attached acknowledgment has been signed and returned. This order expressly limits acceptance to the terms stated herein, and any additional or different terms proposed by Seller are rejected unless expressly assented to in writing by Buyer.

| Item | Description | Approx. Quantity | Unit Price | Approx. Amount |
|---|---|---|---|---|
| 71000060 | Expansion Joints and PVC Conduit System Supply per the attached Schedule of Values (see Attachment A) | | | |
| | | | | |

***APPROXIMATE TOTAL  $794,715.56***

**NOTES:**
- Deliveries to be coordinated with Contractor's Project Superintendent/Project Manager or Designated Representative.
- All delivery personnel entering the project must wear OSHA personal protective equipment if they exit their truck or vehicle.
- All unit prices are firm for the duration of the project.
- All surcharges of any kind whatsoever are included in the unit prices of the agreement.
- The quantities provided in Attachment A may vary. Actual quantities paid will be that which are actually delivered, invoiced and approved by the Contractor and Owner. Increase or decrease in quantities will not affect, in any way, the unit prices shown.
- All materials furnished shall be in accordance with all Contract Documents, approved plans and specifications.
- Vendor shall meet the Contract Project Schedule and shall employ sufficient manpower and resources at all times to maintain the progress of the work. The Vendor shall meet the delivery dates provided by the Contractor.
- Vendor shall comply with the quality control and inspection procedures as described in the Contract Specifications.
- Vendor shall furnish Certificates of Compliance, Mill Certifications and Test Reports as required by the Contract Documents.
- Partial Release & Waiver of Lien – Exhibit E attached. This release must accompany all requests for payment.
- Close Out Documents: Guarantee, Release and Final Waiver of Lien – Exhibit E-1 attached.
- 6% MD State Sales Tax applies to material only. Freight is not taxable. Unit prices include all guarantees and warranties.
- The Vendor must comply with the Buy America provisions as defined in Form of Contract.
- Tooth expansion joints up to 40' lengths.
- Strip seal profiles, 40' max length fabricated with studs, field spliced by Contractor.

**INCLUSIONS:**
- Vendor shall prepare, check and submit for approval shop drawings and catalog cuts in sufficient number and type, as required by the Contract Documents for its scope of work within two (2) weeks of receipt of this Purchase Order. The Vendor is responsible for a complete and acceptable submittal to the Owner and will revise and resubmit as required for approval by the Contractor and Owner.
- Vendor shall hold and maintain its status as a Certified MDTA Minority Business Enterprise (MBE) through the duration of this Purchase Order Agreement and shall participate in the Contractor's MBE Program including any reporting required by Owner. The Vendor certifies that it directly solicited and/or obtained proposals directly from all sub-vendors it has elected to use in the performance of the work under this Purchase Order Agreement. Furthermore, the Vendor certifies that it negotiated the pricing, scope of work and terms with any sub-vendors directly, without any input or influence by representatives of the Tutor Perini Corporation, Cherry Hill Construction, Inc., any vendor, or any subcontractor on this project except for technical matters as requested by Vendor.
- Vendor shall submit completed MBE Questionnaire (Exhibit "K") on monthly basis.
- In terms of MBE participation, Vendor shall provide a commercially useful function and comply with all regulations relative to the Maryland Transportation Authority (MDTA). This shall be a material term of this Agreement.
- Delivery to jobsite in truckload quantities.
- Item 4060: Expansion Joints; fabricated tooth expansion joints w/cover plates & neoprene drainage troughs for Pier 3S, Pier 6S, Pier 4N, Pier 8N, Pier 12S, & Pier 12N. Fabricated nosing angles at abutments. Fabricated strip seal joints w/cover plates for longitudinal joint at unit 1S. abutments A & B. Pier 10S, Pier 15N. All tooth expansion joints are galvanized and epoxy painted. All strip seal joints are inorganic zinc prime painted.
- Item 4061: Fabricated strip seal joint at abutment C, nosing angle, catch basin, pvc pipe. Joints are inorganic zinc prime painted.
- Shop drawings.
- Required lube.
- 3" PVC conduit in 20' lengths.
- Galvanized Junction Boxes.
- 3" rigid conduit expansion sleeves. 3" PVC to rigid adapter. 3" dia. x 12" rigid nipples.
- Fire Hydrant access cover based on 4' wide median barrier.

THIS ORDER IS SUBJECT TO THE FOLLOWING TERMS AND CONDITIONS AS WELL AS THOSE APPEARING ON THE PURCHASE ORDER.

(1) ACCEPTANCE AND ACKNOWLEDGEMENT OF CONTRACT

If the Seller delivers goods to the Buyer, or renders services to the Buyer in accordance with this Purchase Order but without signing and returning the acknowledgement, such act(s) shall be considered as an acceptance of all of the terms of this purchase order and no other terms and shall bind the Buyer only by acceptance of the offer by formal notification. Buyer shall not be bound by any provision or alteration which may appear on Seller's acknowledgement, whether printed or otherwise, which is at variance with or adds to the terms and conditions of this purchase order unless accepted in writing by the Buyer.

(2) COMPLETE AGREEMENT AND AMENDMENTS.

This order, including the terms and conditions on all pages of the purchase order, contains the complete and final agreement between Buyer and Seller, and supersedes any prior proposals, quotes, understandings, correspondence, agreements, etc. No agreement or understanding to modify this contract shall be binding upon the Buyer unless in writing and signed by the Buyer's authorized agent. No course of prior dealings between the parties and no usage of the trade shall be relevant to supplement or explain any term used in this agreement. Acceptance or acquiescence in a course of performance rendered under this agreement shall not be relevant to determine the meaning of this agreement even though the accepting or acquiescing party has knowledge of the nature of the performance and opportunity for objection. Acceptance of goods in any manner contrary to the terms of this purchase order by Buyer shall nevertheless entitle the Buyer to all the objections to said goods provided for by law and this purchase order. Whenever a term, defined by the Uniform Commercial Code is used in this agreement, the definition contained in the Code is to control.

(3) CHANGES.

Without invalidating this purchase order, the Buyer, at any time, may make changes to the purchase order including, but not limited to the goods ordered, the drawings, plans, designs or specifications, quantities ordered, the method of shipment or packing, the place of delivery or the time of performance.

The purchase price of the goods may be increased or decreased only where and to the extent that there is a change in the goods and/or quantity ordered unless stated otherwise herein. In no event shall the Seller be entitled to any damages or increase in its cost and/or price due to being delayed or being caused to accelerate its work, whether such delays or acceleration are caused by the Buyer, its servants, agents and/or employees. Any claim by Seller for adjustment under this clause shall be deemed waived unless asserted in writing with ten (10) days from receipt by Seller of the notification of change. In the event Buyer and Seller are unable to agree on such equitable adjustment, the adjustments shall be determined pursuant to an arbitration held under the auspices of the American Arbitration Association. Such arbitration may be confirmed by either party pursuant to a court order. Nothing provided in this clause shall

excuse the seller from proceeding with the performance of this contract as changed. Any other modification must be in writing and signed by the parties.

(4) DELIVERY

Time is of the essence in this contract, and if delivery of items or rendering of services is not completed by the time specified in this contract, the Buyer reserves the right without liability, in addition to its other rights and remedies, to terminate this contract by notice effective when received by Seller or five (5) days after posting, whichever first occurs as to stated items not yet shipped or service not yet rendered, and to purchase substitute items or services elsewhere and charge the Seller with any loss incurred, legal excuses for late delivery which the Seller may have, notwithstanding. Any provision herein for delivery of articles or the rendering of services by installments shall not be construed as making the obligations of Seller severable.

(5) IDENTIFICATION-(Risk of Loss-Title)

Identification of the goods under Section 2-501 of the Uniform Commercial Code shall occur at the moment this order is accepted by Seller. Title to the goods shall pass to Buyer as soon as the goods are identified. Risk of loss shall remain with the Seller until goods are received and accepted by the Buyer.

(6) INSPECTION

All items received or work performed hereunder is subject to Buyer's and the owner's inspection and acceptance. Buyer reserves the right, at its option, to either reject and refuse acceptance of items or work not in accordance with the instructions, specifications, drawings, plans, or other description furnished or specified by Buyer, to accept and correct at Seller's expense said items or work or to invoke any other remedy available to Buyer. If Buyer rejects any tender of goods under this purchase order, Buyer, at its option, will either reship the goods immediately to Seller express collect or will reasonably notify Seller of Buyer's rejection. If after such notification, Seller fails or neglects to notify Buyer in writing or the parties fail to agree as to the disposition of the rejected goods, Buyer may reship the goods to Seller express collect. Payment for any article or work hereunder shall not be deemed an acceptance thereof.

(7) WARRANTY

The Seller expressly warrants that items and work covered by this order will conform to the specifications, drawings, design, plans, data, or other description furnished or specified by the Buyer, will be fit and sufficient for the purpose intended, merchantable, of good material and workmanship and free from defects. Seller agrees that this warranty shall survive acceptance of the items of work. Said warranty shall be in addition to any warrants of additional scope given to Buyer by Seller.

(8) PATENTS

Seller undertakes and agrees to defend at Seller's own expense all suits, actions or proceedings, in which the Buyer, its successors or assigns, are made defendants for actual or alleged infringement of any U.S. or foreign letters patent resulting from the use or sale of the items, purchased hereunder and further agrees to pay and discharge any and all judgments or decrees which may be rendered in any such suit, action, or proceedings against such defendants therein.

(9) COMPLIANCE WITH LAWS

The Seller further agrees to comply with all applicable administrative and executive orders. Legal venue and the applicable law without regard to that state's conflict of law rules for the

resolution of any dispute arising under this agreement shall rest solely in courts of competent jurisdiction in the State where the subject of this order is to be incorporated in the work of improvement for which this order is issued.

(10) INDEMNIFICATION

Seller covenants to save and hold the Buyer harmless of and from-and to reimburse it for-any and all costs, damages and expenses (including attorney's fees) suffered by or occasioned to it directly or indirectly, through any failure of Seller to comply fully with and perform any act required under any such law, regulation or order set forth in Article (9) above. If this order covers erection, installation, maintenance or the performance of other labor for the Buyer, Seller agrees to indemnify and save harmless the Buyer against all liabilities, claims, and losses, including reasonable attorney's fees or court costs, from injuries or damages, including death, to persons or property in any manner arising from or growing out of the performance of work under this order; Seller also agrees to furnish Buyer with satisfactory evidence of adequate property damage, public liability, workers compensation and unemployment insurance in amounts acceptable to Buyer.

(11) DISCOUNTS

If invoice is subject to cash discount, the discount period will be calculated from the date the invoice is received by the Buyer.

(12) NON-ASSIGNABILITY OF DUTIES

Seller shall not delegate in any manner to any person the performance of any work or supplying of any items under this order without the prior written consent of the Buyer.

(13) WAIVER

No claim or right arising out of a breach of this agreement can be discharged in whole or in part by a waiver or renunciation of the claim or right unless the waiver or renunciation is supported by consideration and is in writing signed by the aggrieved party. Waiver by either Seller or Buyer of a breach by the other of any provision of this agreement shall not be deemed a waiver of future compliance therewith, and such provision shall remain in full force and effect.

(14) TERMINATION

Buyer may, at any time, terminate this agreement for its convenience without cause. In the event of termination for convenience the Seller shall be entitled to payment only for the portion of the goods accepted by Buyer. Upon such termination for convenience, the Seller shall not be entitled to any further monies, including but not limited to perspective or lost overhead or profit on the unperformed portion of the purchase order. If Buyer terminates this agreement for cause and it shall later be determined that the Buyer's termination was wrongful and/or unjustified, such termination shall be deemed to be a termination for convenience.

(15) CONTRACTUAL PERIOD OF LIMITATIONS

No action or proceeding shall be commenced by the Seller at law or in equity upon any cause of action whatsoever out of this purchase order or relating in any way to the performance or breach thereof, unless such action or proceeding shall be commenced by Seller within six (6) months of the last date goods were shipped under this purchase order. Seller's failure to commence an action within such period of time shall constitute an absolute bar and complete defense to any action brought thereafter.

| Field | Value |
|---|---|
| Job No. | **10704500** |
| Date: | 1/23/18 |
| Sales Tax | **See Notes** |

**PURCHASE ORDER**

***TUTOR PERINI CORPORATION***

**Point of Issue**
8211 Washington Blvd.
Jessup, MD 20794

| Order No. | 10704500-PO-013 |
|---|---|

↑This number must appear on all packages, mail, & papers relative to this order.

| Issue To: | Delivery Date | F.O.B. Point |
|---|---|---|
| Nasir & Associates, LLC. 12900 Shenandoah Shores Road Front Royal, VA 22630 Attn: John Stieb (703) 547-9100 | See Notes | Jobsite |
| | Payment Terms | Ship Via |
| | Net 45 Days | Truck |

| Consignee and Destination: | Invoice Address |
|---|---|
| Tutor Perini Corporation  Attn: | Tutor Perini Corporation – Job No. 10704500 1000 Main Street New Rochelle, NY 10801 Attn: Accounts Payable   (914) 739-1908 |

For use in the construction of the Replacement of Canton Viaduct I-895 Over I-95 Ramps, Railroads & City Sts. And Rehabilitation of Baltimore Harbor Tunnel & Tunnel Approaches, Contract No. HT-694-000-006, for the Maryland Transportation Authority (herein after referred to as MDTA). **VENDOR TO FURNISH** all necessary materials, engineering, equipment and incidentals required to manufacture, test, fabricate and ship to jobsite the following, all in accordance with the Contract Documents including All Addenda.

Please enter our order for the following, subject to conditions and instructions named herein. IMPORTANT — This order is not valid until the attached acknowledgment has been signed and returned. This order expressly limits acceptance to the terms stated herein, and any additional or different terms proposed by Seller are rejected unless expressly assented to in writing by Buyer.

## EXCLUSIONS
- Field measurements, or field work of any kind.
- Structural Steel (Diaphragms, Cross Frames, etc.)
- Downspouts or any other drainage materials.
- Outside testing, if required

## TERMS:
- **Acknowledgment:** Please sign and return two (2) original copies to the point of issue address above for processing. This order is not valid until the executed copies are received. Failure to do so could also result in delayed payments.
- **Severability:** Invalidity of any one or more provisions of this purchase order shall not effect or impair the remaining provisions.
- **Business Conduct:** Attached and made part of this purchase order is Tutor Perini Corporation Business Conduct Policy (Exhibit C & C-1).
  1. For the purpose of clarifying the obligations of the Seller in terms of the Contract Documents and clauses incorporated by reference, all references in the Contract Documents to Contractor shall mean Seller.
  2. The Contractor and Vendor shall be mutually bound by the terms of this Agreement and the provisions of the prime Contract Documents in terms of scope, quality, character, administration and procedural manner of the work. The Contractor shall assume toward the Vendor all obligations and responsibilities the Owner, under such documents, assumes toward the Contractor, and the Vendor shall assume toward the Contractor all obligations and responsibilities which the Contractor, under such documents, assumes toward the Owner. The Contractor shall have the benefit of all rights, remedies and redress against the Vendor that the Owner, under such documents, has against the Contractor, and the Vendor shall have the benefit of all rights, remedies and redress against the Contractor that the Contractor under such documents, has against the Owner, insofar as applicable to this Purchase Agreement. Where a provision of such document is inconsistent with a provision of this Agreement, this Agreement shall govern.
  3. Upon execution of this Purchase Order, Vendor shall furnish Contractor with its legal name, legal address, Federal ID # and any State Sales Tax ID#.
  4. Execute copies hereof and return to Contractor. No other form of acceptance is binding on Contractor.
  5. Excess unauthorized shipments subject to rejection and return at Vendor's expense.
  6. All changes must be agreed to in writing by Contractor.
  7. Attach bill of lading or express receipt to each invoice.
  8. This Purchase Order is contingent upon the approval of the Vendor by Owner as a qualified supplier.
  9. Payment will not be made without proof of delivery included with all invoices.
  10. All invoices must reference this Purchase Order Number.
  11. Any provisions or statements of indemnification, releases from liability or damages and/or the like which may be printed on Seller's delivery tickets shall be null and void unless incorporated into the Purchase Order by Buyer.
  12. This sale shall be governed by the Uniform Commercial Code as enacted in the State of Maryland and there shall be no limitations upon the remedies provided thereunder.
  13. Acceptance of the materials by the Buyer is conditioned upon the acceptance of the materials by the Owner of the Project. If the Owner of the Project does not accept the materials, then the Seller's remedies shall be limited to those remedies which the Buyer has against the Owner of the Project.
  14. Unit prices include freight, if applicable.
  15. Tutor Perini Corporation (TPC) shall be known as the Contractor and/or Buyer.
  16. **Maryland Transportation Authority (MDTA)** shall be known as the Owner.
  17. **Nasir & Associates, LLC.** shall be known as the Vendor and/or Seller.
  18. The attached **Exhibits C, C-1, E, E-1, K and Attachment A** are deemed part of this Purchase Order.
  19. Vendor shall sign below and return this Purchase Order to the Buyer. By signing, the person is acknowledging and accepting all prices, terms and conditions noted herein. The person signing is also authorized on behalf of the company, its partners, owners, officers and shareholders to act as an authorized representative to bind the company to the obligations herein.
  20. The venue for all legal proceedings is Baltimore County, Maryland.
  21. Vendor expressly waives any and all rights to trial by jury in any action or proceeding commenced by either party with respect to the Purchase Order or any matter arising under the Purchase Order, or any matter in relation to the work, labor, services or material furnished to the Project.
  22. The Vendor shall not discriminate against any employee or applicant for employment, advancement, transfer, layoff or termination because of race, creed, color, national origin, sex, age, disability or marital status. All Equal Opportunity requirements of the Contract Documents shall be obligations of the Agreement.
  23. The Vendor shall comply with the Executive Order 11246, as amended, Section 503 of the Rehabilitation Act of 1973, as amended, and Section 402 of the Vietnam Era Veteran's Readjustment Assistant Act of 1974, as amended, (38 USC 4212), and their implementing regulations. The Vendor shall also comply with Executive Order 13496 and its implementing regulations including, but limited to, 29CFR Part 471, Appendix A to SubPart A.

TPC Rev: 11/15/17 (MD)

| Date: | | Order No. |
|---|---|---|
| 1/23/18 | ***TUTOR PERINI CORPORATION*** | 10704500-PO-013 |

| Sales Tax | Point of Issue | ↑This number must appear on all packages, mail, & papers relative to this order. |
|---|---|---|
| **See Notes** | 8211 Washington Blvd. Jessup, MD 20794 | |

| Issue To: | Delivery Date | F.O.B. Point |
|---|---|---|
| Nasir & Associates, LLC. 12900 Shenandoah Shores Road Front Royal, VA 22630 Attn: John Stieb (703) 547-9100 | See Notes | Jobsite |
| | Payment Terms | Ship Via |
| | Net 45 Days | Truck |

| Consignee and Destination: | Invoice Address |
|---|---|
| Tutor Perini Corporation | Tutor Perini Corporation – Job No. 10704500 1000 Main Street New Rochelle, NY 10801 |
| Attn: | Attn: Accounts Payable (914) 739-1908 |

For use in the construction of the Replacement of Canton Viaduct I-895 Over I-95 Ramps, Railroads & City Sts. And Rehabilitation of Baltimore Harbor Tunnel & Tunnel Approaches, Contract No. HT-694-000-006, for the Maryland Transportation Authority (herein after referred to as MDTA). **VENDOR TO FURNISH** all necessary materials, engineering, equipment and incidentals required to manufacture, test, fabricate and ship to jobsite the following, all in accordance with the Contract Documents including All Addenda.

Please enter our order for the following, subject to conditions and instructions named herein. IMPORTANT — This order is not valid until the attached acknowledgment has been signed and returned. This order expressly limits acceptance to the terms stated herein, and any additional or different terms proposed by Seller are rejected unless expressly assented to in writing by Buyer.

**TERMS (continued):**

24. It is the policy of Contractor to further the provision of Equal Employment Opportunity and Advancement to all persons without regard to race, creed, color, national origin, sex, age, disability or marital status and to promote the full realization of Equal Employment Opportunity through a positive continuing program. Our affirmative action program addresses the spirit of the guidelines established by Executive Order 11246 and other statutes enacted for the purpose of guaranteeing Equal Employment Opportunities to all qualified persons.

25. Vendor certifies by executing this Purchase Order that all facilities and company activities are non-segregated, except for providing separate or single toilets and necessary changing facilities to assure privacy between sexes in accordance with Article 41 CFR 60-4.3 (a) 7.n of Executive Order 11246.

26. If Seller ships material to Buyer and Buyer accepts it prior to executing this PO, all terms of the PO are accepted by Seller with no modifications.

**TERMS AND CONDITIONS ARE ATTACHED ON PAGE 2**

**(ANY MODIFICATION[S] TO THIS FORM REQUIRES APPROVAL OF TUTOR PERINI CORPORATION-LEGAL DEPARTMENT)**

**Tutor Perini Corporation, an Equal Opportunity Employer M/F/D/V**

**Done and dated the day and year first above written.**

| WE ACKNOWLEDGE RECEIPT OF AND ACCEPT YOUR ORDER SUBJECT TO THE INSTRUCTIONS ON THE FACE PAGE HEREOF AND THE TERMS AND CONDITIONS ATTACHED ON PAGE 2. | ***Tutor Perini Corporation*** |
|---|---|
| BY: _____ | BY: _____ |
| | Officer of Tutor Perini Corporation |
| TITLE: _____ | |
| PRINT NAME: _____ | DATE: _____ |
| DATE: _____ | |

TPC Rev: 11/15/17 (MD)

# Attachment A
## Schedule of Values

Nasir & Associates, LLC.
Canton Viaduct
Contract No. HT-694-000-006
TPC Purchase Order No. 10704500-PO-013
January 23, 2018

Initial

Vendor: _____
Contractor: _____

| Line No. | TPC Item No. | Owner Item No. | Description | Quantity | Unit | Unit Price | Amount |
|---|---|---|---|---|---|---|---|
| 1 | 71000060 | 4006 | 3" PVC CONDUIT | 220 | LF | $ 1.85 | $ 407.00 |
| | | | | | | | |
| | | | **EXPANSION JOINTS BRIDGE BCY102001,S-1** | | | | |
| 2 | 71000060 | 4060 | TOOTH EXPANSION JOINT ASSEMBLY - PIER 4N | 39 | LF | $ 1,610.00 | $ 62,790.00 |
| 3 | 71000060 | 4060 | TOOTH EXPANSION JOINT ASSEMBLY - PIER 8N | 43 | LF | $ 1,415.00 | $ 60,845.00 |
| 4 | 71000060 | 4060 | TOOTH EXPANSION JOINT ASSEMBLY - PIER 12N | 50 | LF | $ 1,610.00 | $ 80,500.00 |
| 5 | 71000060 | 4060 | TOOTH EXPANSION JOINT ASSEMBLY - PIER 3S | 40 | LF | $ 1,610.00 | $ 64,400.00 |
| 6 | 71000060 | 4060 | TOOTH EXPANSION JOINT ASSEMBLY - PIER 6S | 40 | LF | $ 1,610.00 | $ 64,400.00 |
| 7 | 71000060 | 4060 | TOOTH EXPANSION JOINT ASSEMBLY - PIER 12S | 30 | LF | $ 1,610.00 | $ 48,300.00 |
| 8 | 71000060 | 4060 | STRIP SEAL ABUTMENT A SB | 45 | LF | $ 298.00 | $ 13,410.00 |
| 9 | 71000060 | 4060 | STRIP SEAL PIER 10S | 43 | LF | $ 326.00 | $ 14,018.00 |
| 10 | 71000060 | 4060 | STRIP SEAL ABUTMENT B SB | 37 | LF | $ 342.00 | $ 12,654.00 |
| 11 | 71000060 | 4060 | STRIP SEAL ABUTMENT A NB | 42 | LF | $ 307.00 | $ 12,894.00 |
| 12 | 71000060 | 4060 | STRIP SEAL PIER 15N | 71 | LF | $ 280.00 | $ 19,880.00 |
| 13 | 71000060 | 4060 | STRIP SEAL ABUTMENT B NB | 37 | LF | $ 337.00 | $ 12,469.00 |
| 14 | 71000060 | 4060 | LONGITUDINAL STRIP SEAL | 168 | LF | $ 175.00 | $ 29,400.00 |
| 15 | 71000060 | 4060 | ROADWAY ANGLE AT ABUTMENTS | 298 | LF | $ 123.00 | $ 36,654.00 |
| 16 | 71000060 | 4060 | VERTICAL CONDUIT HANGERS W/PVC PLATE and BOLTS | 285 | EA | $ 63.00 | $ 17,955.00 |
| 17 | 71000060 | 4060 | HORIZONTAL CONDUIT HANGERS W/PVC PLATE and BOLTS | 121 | EA | $ 57.75 | $ 6,987.75 |
| 18 | 71000060 | 4061 | STRIP SEAL EXPANSION JOINTS FOR BRIDGE 103001, S-2 (ABUTMENT C) | 29 | LF | $ 364.00 | $ 10,556.00 |
| 19 | 71000060 | 4062 | 3" PVC CONDUIT | 880 | LF | $ 1.85 | $ 1,628.00 |
| 20 | 71000060 | 4062 | JUNCTION BOXES W/ADAPTERS | 8 | EA | $ 730.00 | $ 5,840.00 |
| 21 | 71000060 | 4063 | 3" PVC CONDUIT | 900 | LF | $ 1.85 | $ 1,665.00 |
| 22 | 71000060 | 4063 | JUNCTION BOXES W/ADAPTERS | 8 | EA | $ 730.00 | $ 5,840.00 |
| 23 | 71000060 | 4064 | 3" PVC CONDUIT | 12,800 | LF | $ 1.85 | $ 23,680.00 |
| 24 | 71000060 | 4064 | JUNCTION BOXES W/ADAPTERS | 68 | EA | $ 730.00 | $ 49,640.00 |
| 25 | 71000060 | 4064 | EXPANSION FITTINGS 8" MOVEMENT INCLUDES NIPPLES and ADAPTERS | 12 | EA | $ 650.00 | $ 7,800.00 |
| 26 | 71000060 | 4064 | EXPANSION FITTINGS 4" MOVEMENT INCLUDES NIPPLES and ADAPTERS | 12 | EA | $ 610.00 | $ 7,320.00 |
| 27 | 71000060 | 4065 | 3" PVC CONDUIT | 1,800 | LF | $ 1.85 | $ 3,330.00 |
| 28 | 71000060 | 4065 | JUNCTION BOXES W/ADAPTERS | 10 | EA | $ 730.00 | $ 7,300.00 |
| 29 | 71000060 | 4065 | EXPANSION FITTINGS 4" MOVEMENT INCLUDES NIPPLES and ADAPTERS | 8 | EA | $ 610.00 | $ 4,880.00 |
| 30 | 71000060 | 4066 | 3" PVC CONDUIT | 1,040 | LF | $ 1.85 | $ 1,924.00 |
| 31 | 71000060 | 4066 | JUNCTION BOXES W/ADAPTERS | 8 | EA | $ 730.00 | $ 5,840.00 |
| 32 | 71000060 | 4066 | EXPANSION FITTINGS 4" MOVEMENT INCLUDES NIPPLES and ADAPTERS | 4 | EA | $ 610.00 | $ 2,440.00 |
| 33 | 71000060 | 4120 | FIRE HYDRANT ACCESS HATCH (TYPE XIA) | 8 | EA | $ 2,750.00 | $ 22,000.00 |
| 34 | 71000060 | 4120 | FIRE HYDRANT ACCESS HATCH (TYPE XIB) | 2 | EA | $ 3,250.00 | $ 6,500.00 |
| | | | | | | | |
| | | | MD 6% SALES TAX | 1 | LS | $ 43,568.81 | $ 43,568.81 |
| | | | ESCALATION ALLOWANCE | 1 | LS | $ 25,000.00 | $ 25,000.00 |
| | | | **Total Purchase Order Amount Based Upon Estimated Quantities** | | | | $ 794,715.56 |

Unit prices include all guarantees and warranties.

Final Contract Value will be based on final approved units multiplied times the unit prices.

Maryland Transportation Authority
REPLACEMENT OF CANTON VIADUCT I-895 OVER I-95 RAMPS,
RAILROADS & CITY STS. AND REHABILITATION OF
BALTIMORE HARBOR TUNNEL & TUNNEL APPROACHES
Contract No. HT-694-000-006
TPC Project No. 10704500

## *Tutor Perini Corporation*

# EXHIBIT C

# BUSINESS CONDUCT POLICY

Total Pages 2 (including cover)

(Rev. 11/19/12)

**TUTOR PERINI CORPORATION**

**EXHIBIT C**

**BUSINESS CONDUCT POLICY**

RE: Business Conduct

Gentlemen:

On an annual basis we feel it appropriate to review our policy regarding Business Conduct with outside suppliers of goods and services.

It is our policy to award business solely on merit, without favoritism, at the lowest reasonable price, and whenever practical, on a competitive basis. This policy requires that our employees have no relationships nor engage in any activities that might impair their independence of judgment. Therefore, they must not accept gratuities, gifts or benefits of any kind from outside suppliers of goods and services. Additionally, our employees must comply with the attached document, Tutor Perini Corporation Code of Business Conduct and Ethics (Exhibit C-1, 8 pages).

We request your compliance with this policy when dealing with employees of our Company. If you or any representative of your company is placed in a situation, which is not in compliance with this policy, we require you to contact the Tutor Perini Ethics Hotline at 1-800-355-1077, www.tutorperiniethicshotline.alertline.com.

Thank you for your cooperation.

Sincerely,

TUTOR PERINI CORPORATION

(Rev. 11/19/12)

Maryland Transportation Authority
REPLACEMENT OF CANTON VIADUCT I-895 OVER I-95 RAMPS,
RAILROADS & CITY STS. AND REHABILITATION OF
BALTIMORE HARBOR TUNNEL & TUNNEL APPROACHES
Contract No. HT-694-000-006
TPC Project No. 10704500

*Tutor Perini Corporation*

# EXHIBIT C-1

## CODE OF BUSINESS CONDUCT AND ETHICS

Total Pages 9 (including cover)

(Rev. 11/19/12)

**EXHIBIT C-1**
**TUTOR PERINI CORPORATION**
**CODE OF BUSINESS CONDUCT AND ETHICS**

## 1.  Policy

It is a basic objective of Tutor Perini Corporation (TPC) to be a good corporate citizen throughout the world and to achieve commercial and corporate objectives in a manner consistent with the applicable laws and regulations of each country in which it does business.  TPC requires absolute honesty, and integrity from every director, officer and employee in all dealings with the business community, the public, TPC and each other.

## 2.  Purpose

The purpose of the Code of Business Conduct and Ethics (Code) is to establish guidelines for all TPC (the Company) personnel in order to achieve the highest ethical standards in the operations of its business and to have the Company perceived as a highly ethical and professional concern.

## 3.  Scope

This Code applies to all directors, officers, employees and agents of the Company, and its joint ventures.

This Code and the items cited within it are intended as guidelines outlining the Company's commitment to the highest ethical standards; no written code can possibly describe every situation that may be encountered.  The Company expects every Company employee to adhere to the spirit of this Code, as well as its particular provisions.

## 4.  Responsibility

Directors, officers and employees should be familiar with the Code and appreciate the necessity for sensitivity to ethical considerations.  The monitoring and periodic revision of this Code shall be the responsibility of TPC's Board of Directors, through the Audit Committee.

All employees are required to be familiar with the provisions of this Code and to follow it at all times.  With the exception of non-supervisory employees referred or provided by a union pursuant to a lawful collective bargaining agreement, all employees are required to sign an acknowledgement (Attachment A), that they have read the Code and understand its provisions.

## 5.  Conflicts of Interest

All employees must avoid situations where their personal interest could conflict with the interests of the Company or lead to the employee's responsibilities to the Company being compromised.  Upon an appropriate determination by TPC's Corporate Compliance Officer that a conflict of interest or a potential conflict of interest exists, the employee's interest or connection must be terminated.

(Rev.  11/19/12)

Although it is not possible to describe every situation that may lead to a conflict of interest, employees should, at a minimum, observe the following basic rules:

1. Employees may not have outside financial interests that might influence their judgment, actions, or corporation decisions;
2. No employee, his or her spouse, dependents, or member of his or her household may have, directly or indirectly, a personal or financial interest in any transaction which affects, or may affect the Company.
3. No employee, his or her spouse, dependents, or member of his or her household may be employed by or have, directly or indirectly, a financial interest in any business enterprise with which the Company has business dealings, or with any business that is owned or controlled by any company or principal of any company with which the Company does business. (A financial interest in this sense does not include ownership of a small number of publicly-traded securities of any corporation acquired as part of a normal investment program); and
4. Unless properly authorized, employees shall not give or release, outside the Company any data or information of a confidential nature concerning the Company, its operations, or its clients.
5. In order to avoid even the appearance of a conflict of interest, no employee shall obtain and/or use services, materials, equipment and/or supplies from any person or entity that has been a subcontractor, material man or supplier to the Company or any of its subsidiaries or joint ventures within two (2) years immediately prior to when such employee obtains and/or uses such item. Further, no employee shall use the labor of the Company or any of its joint ventures under any circumstances whatsoever.

Any questions concerning interpretation of conflicts of interest should be directed to TPC's Corporate Compliance Officer or to the Company's Business Unit Compliance Officer.

## 6. Conflicts of Interest

Employees at all levels are expected to exercise good judgment in their internal and external business relationships and to avoid circumstances that conflict with the Company's policies. Employees should strive to avoid even the appearance of impropriety in the discharge of their responsibilities.

No Payments, Gifts or Entertainment of Government Officials – Company employees are prohibited from offering or giving anything of value (including but not limited to money, meals, gifts, gratuities, entertainment or transportation, except incidental transportation to a local jobsite with documented approval by a supervisor) to any employee of any federal, state or local government agency with which the Company does business, has done business, or seeks to do business. (For Political Contributions, see paragraph 9)

No Payments, Gifts, or Entertainment of Union Officials – Company employees are prohibited from offering or giving anything of value (including but not limited to money, meals, gifts, gratuities or transportation) to any labor organization or official in a labor organization that has represented, represents, or may represent the Company's employees (except in instances where a fund raising event is held or an event is held honoring someone from the industry and the Company or any of its officers and employees want to donate money towards that event; or where a meal is offered during a business meeting and other alternatives are impractical).

(Rev. 11/19/12)

<u>Fair Competition</u> – Company employees are prohibited from making or attempting to make any agreement, or participate in or attempt to participate in any scheme, to rig bids, restrain trade by collusion or unfair trade or labor practices, or otherwise prevent the lowest responsible bidder from obtaining a contract. It is the policy of the Company to award business solely based on merit, at the lowest reasonable price, and, wherever practical, on a competitive basis.

<u>Organized Crime</u> – Company employees are prohibited from knowingly participating in the activities of any Organized Crime Group identified as such by the federal, state or municipal law enforcement or investigated agency, or permit or allow any person allegedly employed by or associated with any such Organized Crime Group, to participate in any of the business affairs of the Company.

<u>Entertaining Clients and Prospective Clients</u> – The Company recognizes that Company officers and managers may, on occasion, entertain clients, prospective clients, and other guests. Managers and other employees other than Company officers must obtain the prior approval of their supervising Company officer before incurring such entertainment costs and all such costs must be reasonable. Company officer, managers, and employees are prohibited from providing such entertainment costs to federal, state or local government agency officials.

<u>Government Filings</u> – Company employees are prohibited from filing with a government office a written instrument that intentionally contains a false statement or false information.

### 7. Accounting and Financial Controls

<u>Company Books and Records</u> – It is the Company's policy to comply fully with Generally Accepted Accounting Principles. No false or misleading entries may be made in any Company books, records, or reports for any reason whatsoever. In addition, no unrecorded funds will be established or maintained for any purpose. All transactions will be properly recorded on the books and records of the Company and its joint ventures. Payments will not be made for purposes other than that described by the records supporting the payment of for the benefit of persons whose identity and interests are not disclosed to the Company.

<u>PC Software Company</u> – Company employees will only use software that is licensed or authorized by the Company.

Company Funds – Anyone with control over Company funds is accountable for such funds. When spending Company money, or personal money that will be reimbursed, the individual involved should make sure the expense is actual, warranted and justifiable. Anyone approving or certifying the correctness of any voucher or bill should have reasonable knowledge that the expense and amounts involved are actual, warranted and justifiable.

Company Property – Company property shall not be sold, loaned, given away, intentionally damaged, destroyed, or otherwise disposed of, regardless of its condition or value except with proper authorization. In addition, Company materials, equipment, tools or other property should not be used for non-Company purposes without prior written approval from the appropriate officer of the Company assigned responsibility over the item. Any use of Company owned vehicles over and above that which is authorized for business use must be approved by the appropriate officer of the Company.

(Rev. 11/19/12)

## 8.  Compliance with Laws

The Company seeks to conduct its business in compliance with applicable laws, rules and regulations. No director, officer or employee shall engage in any unlawful activity in conducting the Company's business or in performing his or her day-to-day company duties.  Nor shall any director, officer or employee instruct others to do so.

The Company will diligently investigate the nature of any charges of criminal activity made by a government investigative or prosecutorial agency against any of the Company's employees to determine whether such charges concern business-related activities or would otherwise bear upon the business integrity of the Company and if so, except to the extent the Company is prohibited by a lawful collective bargaining agreement, the Company shall terminate or place any such employee on unpaid leave of absence pending resolution of the criminal charges against such employee and, upon conviction, terminate such employee.

The Company will not engage, as an employee or consultant, any alleged member or associate of an Organized Crime Group, and it will immediately terminate its relationship with any such individual upon learning of such alleged membership or association.

Directors, officers, and employees must promptly report to the Company's Integrity Monitor (IM) any of the following events arising out of or in connection with, whether directly or indirectly the Company's operations:

1.  Any suspected or actual unethical conduct or other impropriety with respect to any government or private contract, including, but not limited to, Port Authority contracts; and
2.  Any suspected or actual crime, whether committed by a Company employee, a subcontractor, consultant, supplier, vendor, labor official, Port Authority employee, or any other government employee.

The Company shall notify the Corporate Compliance Officer and the Corporate Vice President of Human Resources within five (5) business days, in the event that the Company, or any of its directors, officers, project managers, or project executives ("key people"), are subpoenaed, interviewed, questioned, or otherwise contacted, by any government agency, official, or employee in connection with any criminal investigation or proceeding, and whether or not the Company or any of said key people are, or believed to be, the subject or target of any such investigation or proceeding, or are notified or otherwise learn that the Company or any of said key people are under investigation for any alleged violation of criminal law.

The Company shall notify the Corporate Compliance Officer and the Corporate Vice President of Human Resources within five (5) business days, in the event that any of the Company's key people or employees are, or the Company becomes aware that any of its agents are, subpoenaed, interviewed, questioned, or otherwise contacted, by any government agency, official, or employee in connection with any investigation or proceeding involving or related to, allegations of a lack of honesty, business integrity, or ethics, whether of a criminal, civil or administrative nature, and whether or not the Company or any of said key people, agents or employees are, or are believed to be, the subject or target of any such investigation or proceeding or are notified or otherwise learn that the Company or any said key people, agents, or employees, are under investigation for any alleged violation of criminal law.

(Rev.  11/19/12)

The Company's key people and employees must report any suspected or actual improper or illegal conduct directly to Corporate Compliance Officer at the "Hot Line" telephone number to be maintained by the Company. Except as directed by the Corporate Compliance Officer or Corporate Vice President of Human Resources, the fact of any such report of improper or illegal conduct, together with its contents, shall not be reported to any person and must be kept in confidence by said key people and employees who obtain knowledge thereof, and may be communicated to the Company's legal counsel only upon the condition that it be maintained as confidential information of the client.

The Company will take no retaliatory action against an employee for the proper reporting of illegal misconduct or ethical violations to the Company.

## 9. Outside Activities

Employees are expected to conduct themselves in their outside activities in a manner which does not adversely affect their job performance or negatively reflect on the Company.

Memberships – The Company has a long-standing commitment to being a good civic neighbor. The Company supports employees' involvement in community activities and professional organizations. When these interests are pursued in a responsible manner, it reflects favorably upon the employee and the Company. Before accepting a position on the Board of Directors with another company or non-profit organization, an employee must evaluate carefully whether the position could cause, or appear to cause a conflict of interest.

Political Contributions and Activities – All Company employees are required to comply with all federal, state and local laws, including campaign finance laws, regarding contributing to political campaigns or political parties. Company employees may participate in political activities only in their individual capacities. Company employees are prohibited from using Company funds, facilities, or assets, and my not solicit participation from, exert pressure on, or offer any inducement to other Company employees to participate in political activities or make any political contribution. Company employees may not, either directly or indirectly, use their participation in political activities or their making of political contributions as a means to obtain any federal, state or local government contract or to obtain any benefit on such a contract.

## 10. Environmental Compliance

There are many federal, state and foreign laws which govern environmental cleanup and prohibit pollution of the air, soil and water. The Company will comply with those laws in the jurisdictions in which we do business. Although the Company does not expect its employees to become environmental law experts, it does expect the use of common sense by not knowingly and illegally polluting the environment. Further, those employees whose duties, if improperly performed, could result in an adverse impact on the environment should become sufficiently familiar with the environmental laws which apply to the projects on which they are working to properly complete the contracted work.

Additionally, the contracts the Company performs often contain environmental specifications which usually prohibit pollution and deal with disposal of hazardous materials. Those employees who become involved with performing these specifications must be informed of their requirements and must inform

(Rev. 11/19/12)

any involved subcontractors. These specifications must be strictly followed. Violations of environmental laws and contract specification may result in fines, imprisonment, or both for individuals as well as penalties against the Company. Any questions on environmental laws and contract specifications shall be referred to the Company's counsel prior to initiating action or committing work at the jobsite to any subcontractor.

## 11. **Confidentiality**

Directors, officers and employees will keep all non-public information confidential, including but not limited to technical, financial, personnel, insurance and cost information, except when disclosure is authorized by the Company.

## 12. **Insider Trading**

In the course of their association with TPC, directors, officers and employees may have material information about the Company that is not available to the public. No one should purchase or sell TPC securities while in possession of material non-public information, nor should they disclose this information to any other person until it has been disclosed to the public by the Company.

## 13. **Compliance with the Code**

Director, officers and employees (with the exception of non-supervisory employees referred or provided by a union pursuant to a lawful collective bargaining agreement) are required to sign a certificate indicating compliance with the Code annually. Should any executive officer or director see a waiver of any provision of the Code, such request should be referred to the Corporate Governance and Nominating Committee which will provide a recommendation for approval to the Board of Directors if appropriate. Any such waivers will be disclosed to stockholders as required by applicable laws, rules and regulations.

The Code will be reviewed and revised as necessary by the Corporate Governance and Nominating Committee and the Board of Directors.

Suspected or actual violations of this Code must be reported to the Corporate Compliance Officer at the "Hot Line" telephone number to be maintained by the Corporate Compliance Officer. Except as directed by the Corporate Compliance Officer or the Corporate Vice President of Human Resources, the fact of any such report, together with its contents, shall not be reported to any person of than the Corporate Compliance Officer, must be kept in confidence by employees who obtain knowledge thereof, and may be communicated to the Company's legal counsel only upon the condition that it be maintained as confidential information of the client.

The Company will take no retaliatory action against an employee for the proper reporting of illegal misconduct or ethical violations to the Company.

## 14. Violations

Each individual understand that any violation of the basic standards of business conduct will subject the individual to disciplinary action, up to and including dismissal from the Company. Offenses which constitute cause for termination include, but are not limited to, the following:

1. Theft, offering or taking bribes, fraudulent record keeping, embezzlement, forgery, or other criminal, unethical or dishonest conduct;
2. Reporting to work under the influence of alcohol or drugs not taken under the direction of a licensed physician;
3. Working for a competitor or releasing confidential information to a competitor;
4. Insubordination;
5. Falsification of an employment application, job qualifications, or any other Company records;
6. Misconduct on or off the job that materially and adversely affects the Company; or material or repeated violations of the Code.

(Rev. 11/19/12)

**Tutor Perini Corporation**

**EXHIBIT C-1**

**Acknowledgement**

I, _____, hereby certify that I have read and fully understand the TUTOR PERINI CORPORATION CODE OF BUSINESS CONDUCT AND ETHICS, having an effective date of November 19, 2012.

Signature: _____

Date: _____

(Rev. 11/19/12)

Maryland Transportation Authority
REPLACEMENT OF CANTON VIADUCT I-895 OVER I-95 RAMPS,
RAILROADS & CITY STS. AND REHABILITATION OF
BALTIMORE HARBOR TUNNEL & TUNNEL APPROACHES
Contract No. HT-694-000-006
TPC Project No. 10704500

*Tutor Perini Corporation*

# EXHIBIT E

# PARTIAL RELEASE AND WAIVER OF LIEN

Maryland Transportation Authority
REPLACEMENT OF CANTON VIADUCT I-895 OVER I-95 RAMPS,
RAILROADS & CITY STS. AND REHABILITATION OF
BALTIMORE HARBOR TUNNEL & TUNNEL APPROACHES
Contract No. HT-694-000-006
TPC Project No. 10704500

## *Tutor Perini Corporation*

**Exhibit E**
**Tutor Perini Corporation**
**8211 Washington Blvd., Jessup, MD 20794**

## PARTIAL RELEASE AND WAIVER OF LIEN UPON PROGRESS PAYMENT

COMPANY: _____

PROJECT: _____

JOB#: _____

DATE: _____

| | | |
|---|---|---|
| ORIGINAL CONTRACT PRICE | $ | _____ |
| APPROVED CHANGE ORDERS | $ | _____ |
| TOTAL CONTRACT | $ | _____ |
| | | |
| TOTAL BILLED TO DATE | $ | _____ |
| LESS RETENTION OF ___ % | $ | _____ |
| NET DUE | $ | _____ |
| PAYMENTS BALANCE PRESENTLY DUE | $ | _____ |
| | | |
| UNPAID BALANCE PRESENTLY DUE | $ | _____ |

The undersigned acknowledges receipt of the amount set forth above as payments received to date and, upon receipt of the unpaid balance presently due set forth above, to the extent of such payments, does hereby waive and release any claims which it may now or hereafter have upon the land and improvements described above as a mechanic's lien or otherwise, and does further waive and release any claims, demands, actions or causes of action which it may now or hereafter have against Tutor Perini Corporation, its successors, assigns, or sureties in connection with the construction of the improvements of the above described project, except as noted below. The undersigned warrants that the above statement of account is true as of the date hereof and that it has no claims for extra work performed or materials supplied not included in the approved change orders except as specifically endorsed hereon. The undersigned further warrants that all workmen employed by it or its Subcontractors upon the project have been fully paid (including union fringe benefits and funds payments to date hereof and that all material men have been paid for materials delivered to the project. The undersigned further warrants that it has complied with Federal, State and local tax laws including Social Security laws, Unemployment Compensation laws and Workmen's Compensation laws as applicable to this subcontract and all applicable tax and withholding payments are current.

Maryland Transportation Authority
REPLACEMENT OF CANTON VIADUCT I-895 OVER I-95 RAMPS,
RAILROADS & CITY STS. AND REHABILITATION OF
BALTIMORE HARBOR TUNNEL & TUNNEL APPROACHES
Contract No. HT-694-000-006
TPC Project No. 10704500

## *Tutor Perini Corporation*

The undersigned agrees that the Owner of the project and Tutor Perini Corporation may relay upon this release and waiver of liens.

Exceptions:

_____

_____

_____


_____
Company Name

BY: _____

TITLE: _____


STATE OF
COUNTY OF

Subscribed and sworn to before me this ____ day of _____, 20 __


_____
Notary Public

_____
My Commission Expires

Maryland Transportation Authority
REPLACEMENT OF CANTON VIADUCT I-895 OVER I-95 RAMPS,
RAILROADS & CITY STS. AND REHABILITATION OF
BALTIMORE HARBOR TUNNEL & TUNNEL APPROACHES
Contract No. HT-694-000-006
TPC Project No. 10704500

*Tutor Perini Corporation*

EXHIBIT E-1

# CLOSE OUT DOCUMENTS: GUARANTEE, RELEASE AND FINAL WAIVER OF LIEN

# Exhibit E-1

## Release

Know All Men by These Presents, that for and in consideration of the sum of ___ **DOLLARS AND ___/100 CENTS ($__)** in hand paid by Tutor Perini Corporation, (hereinafter called the Contractor) to _____, (hereinafter called the Vendor), the receipt of which is hereby confessed and acknowledged, the Vendor for itself, its successors and assigns hereby remises, releases and forever discharges the Contractor of and from all manner of debts, demands, actions, causes of action, suits, accounts, covenants, contracts, agreements and any and all claims and liabilities whatsoever, in law and in equity arising under or by virtue of a **Purchase Order No. ___-PO-___** with the Contractor dated _____ and any and all deletions, additions and modifications thereto (hereinafter called the Purchase Order) for the **Project Name** (hereinafter called the Project) for **Owner Name**, (hereinafter called the Owner).

The Vendor hereby accepts said sum as full compensation and payment for the work performed under or by virtue of said Purchase Order, and said Vendor warrants and represents that all bills, claims and obligations for materials used, rentals for equipment, labor performed and any other items furnished under or in connection with said Purchase Order have been paid and satisfied.

The Vendor further agrees hereby to indemnify and hold harmless the Contractor and the Owner from any and all liens, financial obligations or claims, including costs and reasonable attorney's fees, arising under or by virtue of said Purchase Order. In addition, _____ herein acknowledges and accepts its responsibility for both known and unknown unresolved disputed issues which may be identified prior to final acceptance of the project by the Owner.

Executed as sealed instrument on this _____ day of _____, 20___.

Attest:

_____
Vendor

By    _____

_____
Notary Public

Exhibit E-1 (Rev. 06/18/15 - Vendor)

## Exhibit E-1

## Final Waiver of Lien

State of: _____ }

           } SS:

County of _____ }


Know All Men By These Presents, that _____, in consideration of One Dollar ($ 1.00) to it paid by Tutor Perini Corporation, being duly sworn says that he is a Vendor of Tutor Perini Corporation, in connection with the **Project Name** (hereinafter called the Project) for **Owner Name**, (herein after called the Owner) and that said _____, has paid for all labor and equipment furnished or used by them in the execution of our **Purchase Order No. _____-PO-___** with said Tutor Perini Corporation, dated _____ for the _____ and related work at the **Project Name**, at the said construction and that we have no outstanding obligations payable or to become payable in connection with this Purchase Order; that we have not filed and will not file any liens against Tutor Perini Corporation or the Owners of the structure in connection with which this Purchase Order was performed. In addition, _____, herein acknowledges and accepts its responsibility for both known and unknown unresolved disputed issues which may be identified prior to final acceptance of the project by the Owner.


Executed as sealed instrument on this _____ day of _____, 20___.



_____
                  Vendor


By    _____ .



Sworn to before me this _____ day of _____, 20___.


_____
Notary Public

Exhibit E-1 (Rev. 06/18/15 - Vendor)

**Exhibit E-1**

**Guarantee**

Know All Men By These Presents, that _____ in consideration of One Dollar ($1.00) to it paid by the Tutor Perini Corporation, the receipt whereof is hereby acknowledged, does hereby guarantee the work performed by it under and by virtue of **Purchase Order No.** ___-**PO-**____ with Tutor Perini Corporation, dated _____ and any and all additions, deletions and modifications thereto for the **Project Name** (hereinafter called the Project) for **Owner Name**, called the Owner against all defects of material and/or workmanship for a period of One Year from the date of receipt by Tutor Perini Corporation, of the final certificate signifying final acceptance of said work by the Owner. _____ also hereby agrees to pay for all damages to any part of the Project resulting from defects in the said work and all expenses necessary to remove, replace, and/or repair said work and any other work damaged in removing or repairing said work.

Executed as sealed instrument on this _____ day of _____, 20____.

Attest:

                              _____
                                    Vendor

By     _____

_____
Notary Public

Exhibit E-1 (Rev. 06/18/15 - Vendor)

Maryland Transportation Authority
REPLACEMENT OF CANTON VIADUCT I-895 OVER I-95 RAMPS,
RAILROADS & CITY STS. AND REHABILITATION OF
BALTIMORE HARBOR TUNNEL & TUNNEL APPROACHES
Contract No. HT-694-000-006
TPC Project No. 10704500

## *Tutor Perini Corporation*

# EXHIBIT K

# MONTHLY VENDOR MBE QUESTIONNAIRE

Total Pages 2 (including cover)



**Exhibit K**

### *Monthly Subcontractor / Vendor MBE Questionnaire*

Contract No.: _____

Month Ending: _____

Subcontractor / Vendor: _____     Date: _____

1. Did you subcontract any portion of the work to a MBE or non-MBE     YES _____     NO _____
   If YES, fully explain why, describe the work subcontracted and the approximate dollar value of subcontracted work.


2. Did you perform the work with your own forces?     YES _____     NO _____

3. Did you utilize employees or former employees of TPC?   YES _____     NO _____

4. Did you manage and supervise the work with your own project managers and superintendents?

   YES _____ NO _____

5. Did you use employees from an affiliate company or any MBE or non-MBE?YES _____     NO _____
   If YES, explain fully and provide the name of the company and of the individuals, an allocation of hours and value of the labor performed by the employees of the company.


6. Did you rent/lease or use equipment from TPC or an affiliate company during the report period?

   YES _____ NO _____

7. Has the scope of work, subcontract or purchase order amount changed since the last report?

   YES _____ NO _____

8. Are you aware of any improprieties in the execution of the subcontract/purchase order work regarding the Commercial Useful Function (CUF) and compliance with 49 CFR Part 26 or the Owner's MBE requirements?
   YES _____ NO _____
   If YES, fully explain.


I, _____, the _____ of _____
     (Print Name)                   (Print Title)            (Print Name of Firm)

do hereby certify that all the information provided above is true and accurate.


_____
    (Preparer Signature)

County of: _____
State of: _____

Sworn before me this _____ day of _____, 20____


_____
    (Notary Public)